SEALED

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2014 AUG 26   PM 3: 52

DEPUTY CLERK _aaa_

ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *ex rel.* SUZANNE SCOTT and | § | |
| SAVANNAH SOGAR, | § | |
| | § | **CIVIL ACTION NUMBER:** |
| Plaintiff, | § | |
| | § | |
| v. | § | **3-14CV3065-D** |
| | § | |
| PINE CREEK MEDICAL | § | **TO BE FILED UNDER SEAL** |
| CENTER, LLC, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

The UNITED STATES OF AMERICA ("Plaintiff") *ex rel.* SUZANNE SCOTT and

SAVANNAH SOGAR (collectively, "Relators") respectfully submits this complaint, stating

the following claims against PINE CREEK MEDICAL CENTER, LLC ("Defendant").

### Introduction

1.      This is a civil action under the False Claims Act, 31 U.S.C. §§ 3729-3733.

Defendant operates a hospital.  Defendant violated the Stark Law, 42 U.S.C. § 1395nn, and

the Anti-Kickback Act, 42 U.S.C. § 1320a-7b, by inducing and accepting referrals of

Medicare patients from physicians with whom Defendant had financial relationships.

Defendant submitted unauthorized claims for Medicare payments with respect to the

unlawfully referred patients, and failed to return to the Government payments that Defendant

received as a result of the unlawful referrals.



## Jurisdiction

2.      This action arises under 31 U.S.C. §§ 3729-30.  Jurisdiction over the subject matter of this action is conferred on the Court by 28 U.S.C. §§ 1331 and 1345, and 31 U.S.C. § 3730(b).

## Venue

3.      The venue of this civil action is proper under 28 U.S.C. § 1391(b).  Defendant maintains its principal place of business in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## The Parties

4.      Suzanne Scott, one of Relators herein, is a natural person and a citizen of the State of Texas.

5.      Savannah Sogar, one of Relators herein, is a natural person and a citizen of the State of Texas.

6.      Pine Creek Medical Center, LLC, Defendant herein, is or purports to be a limited liability company organized and existing under the laws of the State of Texas and maintaining its principal place of business at 9032 Harry Hines Boulevard, Dallas, Texas 75235, an address within Dallas County, Texas, and the Northern District of Texas.  The registered agent for service of process on Pine Creek Medical Center, LLC is Andrew N. Meyercord, whose registered address is 1601 Elm Street, Suite 4600, Dallas, Texas 75201.

## Conditions Precedent

7.      All conditions precedent have been performed or have occurred.

## Overview of Applicable Laws

### *Medicare*

8.      Medicare is a system of federally funded health insurance for people aged 65 or over, people who are disabled, and people suffering from end-stage renal disease.

9.      Medicare was established by Title XVIII of the Social Security Act. Title XVIII is codified as subchapter XVIII of Title 42 of the United States Code.

10.      Part A of Title XVIII, also known as "Medicare Part A," provides hospital insurance. The benefits available under Medicare Part A are specifically described in Title 42, Part 409, of the Code of Federal Regulations.

11.      Part B of Title XVIII, also known as "Medicare Part B," provides supplemental medical insurance covering a portion of the cost of certain physicians' services, outpatient services, and other medical services and devices. The benefits available under Medicare Part B are specifically described in Title 42, Part 410, of the Code of Federal Regulations.

12.      Medicare is administered by the United States Department of Health and Human Services ("HHS") through an operating division known as the Centers for Medicare and Medicaid Services ("CMS").

13.      Medicare has strict eligibility requirements. To be eligible for benefits under Medicare Part A, one must meet the requirements set forth in Title 42, Part 406, of the Code of Federal Regulations. To be eligible for benefits under Medicare Part B, one must meet the requirements set forth in Title 42, Part 407, of the Code of Federal Regulations.

14.     There are many exclusions from and limitations on Medicare coverage. These are set forth in Title 42, Part 411, of the Code of Federal Regulations.

15.     Providers of healthcare services and devices submit claims for Medicare benefits on behalf of patients who are – or who are supposed to be – eligible and entitled to receive those benefits from Medicare *and* not subject to any exclusion or limitation on coverage. *See* 42 C.F.R. Part 424, subpart A. Federal funds are paid directly to healthcare providers who submit these claims. *See* 42 C.F.R. Part 424, subpart D.

16.     It is the responsibility of healthcare providers, such as Defendant, to establish that patients, for whom Medicare claims are submitted, are both eligible and entitled to receive the benefits claimed, and further to establish that the claims submitted by them are not subject to any exclusion or limitation on coverage under Medicare.

### *The Stark Law*

17.     A statute commonly known as "the Stark Law" generally prohibits physicians from referring Medicare-eligible patients to an entity for certain "designated health services" if the referring physician has a "financial relationship" with the entity.   The Stark Law is codified in Title 42, Section 1395nn, of the United States Code, and the general prohibition is set forth in subsection (a)(1).

a.     The Stark Law defines "designated health services" to include "hospital services." 42 U.S.C. § 1395nn(h)(6). Both "inpatient" and "outpatient" hospital services are included. *Id.* The term also includes clinical laboratory services, physical therapy services, occupational therapy services, radiology services, radiation therapy services and supplies,

durable medical equipment and supplies, parenteral and enteral nutrients, equipment, and supplies, prosthetics, orthotics, and prosthetic devices and supplies, home health services, outpatient prescription drugs, and outpatient speech-language pathology services. *Id.*

        b.     The term "financial relationship" is defined broadly to include any "compensation arrangement" between a physician and an entity. 42 U.S.C. § 1395nn(a)(2). The term "compensation arrangement" is, in turn, defined broadly as "any arrangement involving any remuneration between a physician . . . and an entity," subject to various exceptions. 42 U.S.C. § 1395nn(h)(1)(A). "Remuneration includes any remuneration, directly or indirectly, overtly or covertly, in cash or in kind." 42 U.S.C. § 1395nn(h)(1)(B).

       18.     The Stark Law expressly forbids healthcare providers to submit claims under Medicare for services furnished to a patient who was referred in violation of the Stark Law. 42 U.S.C. § 1395nn(a)(1)(B) ("an entity may not present or cause to be presented a claim under this subchapter [i.e., Title XVIII of the Social Security Act, also known as Medicare] . . . for designated health services furnished pursuant to a referral prohibited under [subsection (a)(1)(A)]").

       19.     Moreover, the Stark Law expressly disallows Medicare payments for services provided to a patient referred in violation of the Stark law. 42 U.S.C. § 1395nn(g)(1) ("[n]o payment may be made under this subchapter [i.e., Medicare] for a designated health service which is provided in violation of subsection (a)(1) of this section").

       20.     The Stark Law imposes an affirmative duty to refund "on a timely basis" any Medicare payments collected in violation of the Stark Law. 42 U.S.C. § 1395nn(g)(2).

21.     The Stark Law recognizes various exceptions to its general prohibition of referrals by physicians to entities with which the physician has a financial relationship.  *See* 42 U.S.C. § 1395nn(b)-(e).  *See also* 42 C.F.R. §§ 411.355-411.357.

### *The Anti-Kickback Act*

22.     The Anti–Kickback Act is a criminal statute prohibiting anyone from knowingly and willfully soliciting, receiving, offering, or paying any remuneration in return for referring an individual to a person for the furnishing of any item or service for which payment may be made under a federal health care program.  The Anti-Kickback Act is codified in Title 42, Section 1320a-7b, of the United States Code, and the prohibition described above is set forth in subsections (b)(1) and (b)(2) thereof.

23.     Like the Stark Law, the Anti-Kickback Act is subject to various exemptions. 42 U.S.C. 1320a-7b(b)(3).  *See also* 42 C.F.R. § 1001.952.

24.     In the Patient Protection and Affordable Care Act ("PPACA"), Pub.L 111-148, § 6402(f), 124 Stat. 119 (2010), which became law on May 23, 2010, Congress amended the Anti-Kickback Act in two respects of particular significance in this case.

        a.      Congress lowered the level of scienter necessary to commit a violation of the Anti-Kickback Act:  "With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section." 42 U.S.C. § 1320a-7b(h).  This provision legislatively overruled case law requiring proof of specific intent to violate the Anti-Kickback Act.

b.     Congress also specified that, in addition to the other penalties and remedies prescribed for violations of Anti-Kickback Act, "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of subchapter III of chapter 37 of title 31, United States Code [i.e., the False Claims Act]." 42 U.S.C. § 1320a-7b(g). Thus, a claim for payment pursuant to Medicare, for services or devices provided to a patient who was referred in violation of the Anti-Kickback Act, implicates the False Claims Act and gives rise to the private right-of-action afforded therein.

### The False Claims Act

25.     The False Claims Act ("FCA") creates civil liability for any person who:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

(D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

(E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(F) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the



Government, or a member of the Armed Forces, who lawfully
may not sell or pledge property; or

(G) knowingly makes, uses, or causes to be made or used, a
false record or statement material to an obligation to pay or
transmit money or property to the Government, or knowingly
conceals or knowingly and improperly avoids or decreases an
obligation to pay or transmit money or property to the
Government . . . .

31 U.S.C. § 3729(a)(1).

26.    As used in the FCA, the terms "knowing" and "knowingly" are defined to mean

that a person, with respect to information, "(i) has actual knowledge of the information; (ii)

acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless

disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). Those terms

"require no proof of specific intent to defraud." *Id.*

27.    A person who is found to have violated the FCA:

is liable to the United States Government for a civil penalty of
not less than $5,000 and not more than $10,000, as adjusted by
the Federal Civil Penalties Inflation Adjustment Act of 1990,
plus 3 times the amount of damages which the Government
sustains because of the act of that person.

31 U.S.C. § 3729(a)(1). Such person is also liable for the costs of a civil action brought to

recover such penalties or damages. 31 U.S.C. § 3729(a)(3).

28.    A private person may bring, for himself and for the Government of the United

States, a civil action for a violation of the FCA. 31 U.S.C. § 3730(b)(1). Such an action is

to be brought in the name of the Government of the United States. *Id.* The person bringing

the action is entitled to recover a percentage of the proceeds of the action or settlement of the

claim. 31 U.S.C. § 3730(d). The percentage to be paid to that person must be within the range of 15 to 30 percent, depending on whether the Government elects to proceed with the action and the extent to which the person bringing the action "substantially contributed to the prosecution of the action." 31 U.S.C. §§ 3730(d)(1), (2).[1] Such person is also entitled to receive an amount for reasonable expenses necessarily incurred, plus reasonable attorneys' fees and court costs, all of which are to be awarded against the defendant. 31 U.S.C. § 3730(d)(1), (2).

29.     Significant amendments to the FCA were made in the Fraud Enforcement Recovery Act ("FERA"), Pub.L. 111-21, § 386, 123 Stat. 1617 (2009), which became law on May 20, 2009. The amendments include the addition of a provision creating liability under the FCA for what have become known as "reverse false claims," i.e., knowing concealment or avoidance of obligations to pay money to the Government (as distinguished from requests to the Government for money). *See* 42 U.S.C. § 3729(a)(1)(G).

30.     Thus, in the past two years, Congress has twice (first in the FERA and then in the PPACA) acted to enhance enforcement of the prohibitions against referrals of Medicare patients to healthcare providers who have a financial relationship with the referring physician, and to facilitate civil actions against persons who violate those prohibitions.

---

[1] If, however, the person bringing the action "planned and initiated" the violation upon which the action is based, then the court may reduce the share of the proceeds that such person would otherwise receive, "taking into account the role of that person in advancing the case to litigation and any relevant circumstances pertaining to the violation." 31 U.S.C. § 3730(d)(3).

## Factual Basis of the Claims[2]

### *Defendant and Its Marketing Activities*

31.     Pine Creek Medical Center, LLC ("Defendant") owns and operates a healthcare facility located at 9032 Harry Hines Boulevard in the City of Dallas, Texas, an address within Dallas County, Texas.  The facility was formerly operated by an entity named Pine Creek Medical Center, LP, a general partnership that had been registered as a limited liability partnership.  On or about December 9, 2011, Pine Creek Medical Center, LP was converted to a limited liability company and became Pine Creek Medical Center, LLC, Defendant herein.

32.     Pine Creek Medical Center, LLC is liable for the debts owed by Pine Creek Medical Center, LP, to the Government of the United States at the time of the conversion.

33.     Since before August 2009, Defendant has actively encouraged physicians to refer patients to Defendant's healthcare facility.  Defendant had an entire department, known as the "Marketing Department," devoted primarily to persuading physicians to refer their patients to Defendant.

34.     In order to induce physicians to refer their patients to Defendant, Defendant gave to the physicians goods and services of considerable value.  For example:

            a.     Defendant paid for advertisements in *D Magazine* for various doctors, including but not limited to Dr. Neil Atlin, Dr. Richard Buch, Dr. Don Buford, Dr. Terry

---

[2]  This complaint does not set forth every fact supporting the claims pleaded herein. It is intended only to be "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Rule 8(a) of the Federal Rules of Civil Procedure.

Gemas, Dr. Richard Ha, Dr. Shade Ogunro, Dr. Marcia Oliveira, Dr. Francisco Battle, Dr. Alexander Cho, Dr. Siddarth Jain, Dr. Roy Carrington Mason, Dr. Jeffrey Toubin, Dr. Roy Ashton, Dr. Scott Ashton, and Dr. Ivan Ashton. Defendant paid for design and photographic services in connection with creation of the ads. Defendant was not mentioned in the ads, so they did not constitute marketing by Defendant of its own services.

        b.     Defendant paid for an advertisement in the *Fort Worth Star-Telegram* for Dr. Bruce Prager and Dr. Charles Whittenburg. Defendant was not mentioned in the ad, so it did not constitute marketing by Defendant of its own services.

        c.     Defendant paid for an advertisement in the *Dallas Theater Center* for Dr. Don Buford. Defendant was not mentioned in the ad, so it did not constitute marketing by Defendant of its own services.

        d.     Defendant paid for radio and television advertising for various doctors, including but not limited to Dr. Dirk Rodriguez, and Defendant provided design services in connection with the creation of the ads. The ads did not mention Defendant, so they did not constitute marketing by Defendant of its own services.

        e.     Defendant paid for pay-per-click advertising campaigns for various doctors, including but not limited to Dr. Frank Feigenbaum, Dr. Bruce Prager, Dr. Charles Whittenburg, and Dr. Jeff Zhao.

        f.     Defendant paid to create or upgrade websites for various doctors, including but not limited to Dr. Bala Giri, Dr. Dirk Rodriguez, and Dr. Jeff Zhao.

g.      Defendant paid for lunches and dinners, to which primary care physicians were invited, in order to promote the practices of various doctors, including but not limited to Dr. Ray Aronowitz, Dr. Kendal Carll, Dr. Frank Feigenbaum, Dr. Terry Gemas, Dr. Bala Giri, Dr. Nilpesh Petal, Dr. Bruce Prager, Dr. Kyle Stuart, Dr. Marvin Van Hal, Dr. Charles Whittenburg, Dr. Eric Wieser, and Dr. Constance Zhou.

h.      Defendant paid for the design and printing of brochures and/or business cards for various doctors, including but not limited to Dr. Neil Atlin, Dr. Frank Feigenbaum, Dr. Bala Giri, Dr. Olayinka Ogunro, Dr. Donald Ozumba, Dr. Kyle Stuart, Dr. Marvin Van Hal, Dr. Eric Wieser, Dr. Jeff Zhao.

I.      On two occasions, Defendant paid part of the cost of a "Sleep Symposium" for the benefit of Dr. Henry Raroque.

j.      Defendant provided marketing services to various doctors, including but not limited to Dr. Joseph Cribbins.

k.      Defendant paid for a billboard advertisement for a practice group named "All Star Orthopaedics," in which Dr. Stephen Timon is a principal. Defendant also provided design services in connection with the creation of the billboard advertisement.

l.      Defendant conferred financial benefits, similar to those described above, on other physicians whose names Relators do not presently remember, in order to induce those physicians to refer their patients to Defendant.

35.    The financial benefits conferred by Defendant on the physicians named above, and on many others, constitute "remuneration" under the Stark Law because "[r]emuneration



includes any remuneration, directly or indirectly, overtly or covertly, in cash or in kind." 42 U.S.C. § 1395nn(h)(1)(B).

36. Consequently, Defendant had a "financial relationship" with each of the physicians named above, and with many others, because Defendant entered into a "compensation arrangement" with each of them. *See* 42 U.S.C. § 1395nn(a)(2). As noted above, a "compensation arrangement" is "any arrangement involving any remuneration between a physician . . . and an entity," subject to various exceptions not applicable here. *See* 42 U.S.C. § 1395nn(h)(1)(A).

37. Under the Anti-Kickback Act, it was unlawful for Defendant to offer or to pay any remuneration in return for referral of an individual to Defendant for the furnishing of any item or service for which payment may be made under a federal health care program. *See* 42 U.S.C.§ 1320a-7b. And under the Stark Law, it was unlawful for Defendant to bill Medicare for services or devices provided to a patient who was referred to Defendant by a physician with whom Defendant had a "financial relationship." *See* 42 U.S.C. § 1395nn(a). Nevertheless, Defendant did so – intentionally and systematically.

### *Involvement of Relators*

38. Relator Suzanne Scott was hired by Defendant in August 2009 to serve as its Director of Marketing, a position she occupied until February 17, 2014, when her employment by Defendant was terminated. As Director of Marketing for Defendant, Relator Suzanne Scott was the manager of the Marketing Department, and she oversaw the efforts – including the payment of remuneration – to persuade physicians to refer their patients to

- 13 -

Defendant, as described above. Relator Suzanne Scott had no involvement in submitting claims to the Government or in collecting money from the Government, so she was not involved in the submission or collection of any false claim.

39.     Relator Savannah Sogar was hired by Defendant in November 2011 to serve as a "Physician Marketer," a position she occupied until February 17, 2014, when her employment by Defendant was terminated. As a Physician Marketer for Defendant, Relator Savannah Sogar was directly involved in the efforts – including the payment of remuneration – to persuade physicians to refer their patients to Defendant, as described above. Relator Savannah Sogar had no involvement in submitting claims to the Government or in collecting money from the Government, so she was not involved in the submission or collection of any false claim.

### *Violations of the Stark Law and the Anti-Kickback Act*

40.     Each of the financial benefits described above constituted a "compensation arrangement" (as defined in 42 U.S.C. § 1395nn(h)(1)) between Defendant and a physician because the agreement provided for one or more payments of money by Defendant directly to, or for the benefit of, the physician. As a result, Defendant had a "financial relationship" (as defined in 42 U.S.C. § 1395(a)(2)) with each of those physicians. In light of the financial relationships, the referrals of patients by those physicians to Defendant were prohibited by the Stark Law, *unless* an exemption is shown to apply. 42 U.S.C. § 1395nn(a)(1). The financial benefits conferred by Defendant on the physicians do not fall within any exemption to the Stark Law.

41.     Defendant knowingly and willfully offered and paid remuneration in return for referrals of individuals to Defendant for the furnishing of services and devices for which payment may be, and in fact was, made under a federal health care program. Consequently, Defendant violated the Anti-Kickback Act. *See* 42 U.S.C. § 1320a-7b(b)(1), (b)(2). None of the exemptions from the Anti-Kickback Act apply to the financial benefits paid by Defendant to the referring physicians. *See* 42 U.S.C. 1320a-7b(b)(3). *See also* 42 C.F.R. § 1001.952. In addition to the other penalties and remedies prescribed for violations of Anti-Kickback Act, "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of subchapter III of chapter 37 of title 31, United States Code [i.e., the False Claims Act]." 42 U.S.C. § 1320a-7b(g).

### *Submission of False Claims*

42.     Because the referrals of patients to Defendant by the recruited physicians and the other physicians in their practice groups were in violation of the Stark Law, it was unlawful for Defendant to submit Medicare claims related to those patients. *See* 42 U.S.C. § 1395nn(g)(1).

43.     The referrals also were in violation of the Anti-Kickback Act, because Defendant made payments to the referring physicians in order to induce them to make referrals. Medicare claims including items or services resulting from those referrals constitute fraudulent claims for purposes of the FCA. 42 U.S.C. § 1320a-7b(g).

44.     Nevertheless, using form UB-92 (also known as form CMS 1450) and forms CMS 2552-96 and CMS 2552-10 (or similar forms), Defendant submitted large numbers of

claims for Medicare payments related to patients unlawfully referred to Defendant by the recruited physicians and their practice groups, and Defendant received from the Government payments based on those claims. The annual cost reports submitted by Defendant included the following certification, which was signed by an officer of Defendant:

> I HEREBY CERTIFY that I have read the above statement and that I have examined the accompanying electronically filed or manually submitted cost report and the Balance Sheet and Statement of Revenue and Expenses . . . and that to the best of my knowledge and belief, it is a true, correct and complete statement prepared from the books and records of the provider in accordance with applicable instructions, except as noted. I further certify that I am familiar with the laws and regulations regarding the provision of health care services and that the services identified in this cost report were provided in compliance with such laws and regulations.

(This certification was required by 42 C.F.R. § 413.24(f)(4)(iv).) Thus, with respect to every claim for Medicare benefits, Defendant expressly or, in the alternative, impliedly certified that the patient had been referred to Defendant in compliance with the Stark Law and the Anti-Kickback Act.

### *Failure To Refund Amounts Owed to the Government*

45.     Having collected payments for designated health services that were performed pursuant to prohibited referrals, Defendant was obligated to refund all collected amounts "on a timely basis," which is legally defined as "the 60-day period from the time the prohibited amounts [were] collected by [Defendant]." 42 C.F.R. §§ 411.353(d); 1003.101. In addition, by a date certain after filing each of its annual cost reports, Defendant had an affirmative duty to refund the Medicare payments that it had received during the period covered by the cost

report as a result of claims related to the unlawfully referred patients. 42 U.S.C. § 1395nn(g)(2). "An overpayment must be reported and returned . . . by the later of (A) the date which is 60 days after the date on which the overpayment was identified; or (B) the date any corresponding cost report is due, if applicable." 42 U.S.C. § 1320a-7k(d)(2). Upon information and belief, Relators aver that Defendant failed to comply with its duty to refund the Medicare payments that it had received in connection with the unlawful referrals, thereby triggering "reverse false claim" liability under the FCA. *See* 31 U.S.C. § 3729(a)(1)(G).

### First Set of Claims
### Liability Under 31 U.S.C. § 3729(a)(1)(A) for Presenting False Claims[3]

46.    The averments of Paragraphs 1-44 are incorporated by reference herein. If any of those averments are inconsistent with this set of claims, they are pleaded in the alternative, as expressly authorized by FED. R. CIV. P. 8(d)(3).

47.    Defendant is liable under 31 U.S.C. § 3729(a)(1) for knowingly presenting, or causing to be presented, one or more false or fraudulent Medicare claims for payment or approval. *See* 31 U.S.C. § 3729(a)(1)(A).

48.    Defendant's violations of 31 U.S.C. § 3729(a)(1)(A) proximately caused the United States to sustain substantial damages. The recoverable damages include the sum of all payments to Defendant in response to Medicare claims relating to patients referred to Defendant by the physicians with whom Defendant had Physician Recruitment Agreements. In addition, with respect to each and every physician who was recruited to join a practice

---

[3]    The headings above the enumerated sets of claims in this complaint are provided only for ease of reference and should not be construed to limit any of the claims.

group, the damages also include the sum of all payments to Defendant in response to Medicare claims relating to patients referred to Defendant, after the Physician Recruitment Agreement was made, by the physicians whose practice was joined by the recruited physician.

### Second Set of Claims
### Liability Under 31 U.S.C. § 3729(a)(1)(B) for Making and Using False Records

49.     The averments of Paragraphs 1-44 are incorporated by reference herein. If any of those averments are inconsistent with this set of claims, they are pleaded in the alternative, as expressly authorized by FED. R. CIV. P. 8(d)(3).

50.     Defendant is liable under 31 U.S.C. § 3729(a)(1) for knowingly making, using, or causing to be made or used one or more false records or statements material to false or fraudulent claims. *See* 31 U.S.C. § 3729(a)(1)(B).

51.     Defendant's violations of 31 U.S.C. § 3729(a)(1)(B) proximately caused the United States to sustain substantial damages. The recoverable damages include the sum of all payments to Defendant in response to Medicare claims relating to patients referred to Defendant by the physicians with whom Defendant had Physician Recruitment Agreements. In addition, with respect to each and every physician who was recruited to join a practice group, the damages also include the sum of all payments to Defendant in response to Medicare claims relating to patients referred to Defendant, after the Physician Recruitment Agreement was made, by the physicians whose practice was joined by the recruited physician.

**Third Set of Claims**
**Liability Under 31 U.S.C. § 3729(a)(1)(G) for Making and Using False Records**

52.     The averments of Paragraphs 1-44 are incorporated by reference herein. If any of those averments are inconsistent with this set of claims, they are pleaded in the alternative, as expressly authorized by FED. R. CIV. P. 8(d)(3).

53.     Defendant is liable under 31 U.S.C. § 3729(a)(1) for knowingly making, using, or causing to be made or used one or more false records or statements material to obligations to pay or transmit money to the Government. *See* 31 U.S.C. § 3729(a)(1)(G).

54.     Defendant's violations of 31 U.S.C. § 3729(a)(1)(G) proximately caused the United States to sustain substantial damages. The recoverable damages include the sum of all payments to Defendant in response to Medicare claims relating to patients referred to Defendant by the physicians with whom Defendant had Physician Recruitment Agreements. In addition, with respect to each and every physician who was recruited to join a practice group, the damages also include the sum of all payments to Defendant in response to Medicare claims relating to patients referred to Defendant, after the Physician Recruitment Agreement was made, by the physicians whose practice was joined by the recruited physician.

**Fourth Set of Claims**
**Liability Under 31 U.S.C. § 3729(a)(1)(G) for Concealment or Avoidance of Obligations**

55.     The averments of Paragraphs 1-44 are incorporated by reference herein. If any of those averments are inconsistent with this set of claims, they are pleaded in the alternative, as expressly authorized by FED. R. CIV. P. 8(d)(3).

56.     Defendant is liable under 31 U.S.C. § 3729(a)(1) for knowingly concealing, or knowingly and improperly avoiding or decreasing, one or more obligations to pay or transmit money or property to the Government. *See* 31 U.S.C. § 3729(a)(1)(G).

57.     Defendant's violations of 31 U.S.C. § 3729(a)(1)(G) proximately caused the United States to sustain substantial damages. The recoverable damages include the sum of all payments to Defendant in response to Medicare claims relating to patients referred to Defendant by the physicians with whom Defendant had Physician Recruitment Agreements. In addition, with respect to each and every physician who was recruited to join a practice group, the damages also include the sum of all payments to Defendant in response to Medicare claims relating to patients referred to Defendant, after the Physician Recruitment Agreement was made, by the physicians whose practice was joined by the recruited physician.

### Fifth Set of Claims
### Liability Under 31 U.S.C. § 3729(a)(1)(C) for Conspiracy

58.     The averments of Paragraphs 1-44 are incorporated by reference herein. If any of those averments are inconsistent with this set of claims, they are pleaded in the alternative, as expressly authorized by FED. R. CIV. P. 8(d)(3).

59.     Defendant is liable under 31 U.S.C. § 3729(a)(1) for conspiring to commit one or more violations of subparagraphs (a)(1)(A), (B), and (G) of Title 31, Section 3729, of the United States Code. *See* 31 U.S.C. § 3729(a)(1)(C). In return for Defendant's agreement not to enforce the terms of the applicable Physician Recruitment Agreement, and specifically Defendant's agreement to make payments and to forgive debts when Defendant had no

contractual duty to do so, each of the recruited physicians agreed to refer, and did in fact refer, patients to Defendant in violation of both the Stark Law and the Anti-Kickback Act.

60.     Defendant's violations of 31 U.S.C. § 3729(a)(1)(C) proximately caused the United States to sustain substantial damages. The recoverable damages include the sum of all payments to Defendant in response to Medicare claims relating to patients referred to Defendant by the physicians with whom Defendant had financial relationships, as described above.

### Plaintiff's Prayer for Relief

WHEREFORE, based on the foregoing averments, Plaintiff prays that upon proper service of process (or waiver thereof), notice, and trial, or upon motion of Plaintiff for entry of default judgment or summary judgment, the Court render judgment awarding Plaintiff the following relief against Defendant:

(1)     Three times the amount of money damages sustained by Plaintiff because Defendant:

(a)     knowingly presented, or causing to be presented, one or more false or fraudulent claims for payment or approval;

(b)     knowingly made, used, or caused to be made or used one or more false records or statements material to false or fraudulent claims;

(c)     knowingly made, used, or caused to be made or used one or more false records or statements material to obligations to pay or transmit money to the Government;

(d)    knowingly concealed, or knowingly and improperly avoided or decreased, one or more obligations to pay or transmit money or property to the Government; and/or

(e)    conspired to commit one or more violations of subparagraphs (a)(1)(A), (B), and (G) of Title 31, Section 3729, of the United States Code;

(2)    Civil penalties of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, times the number of instances in which Defendant violated 31 U.S.C. § 3729(a)(1);

(3)    Prejudgment interest at the highest lawful rate on all money damages from the date on which the damages accrued to the date of judgment;

(4)    All costs of court;

(5)    Postjudgment interest at the highest lawful rate on the total amount of the judgment from the date of the judgment until paid, in accordance with applicable law;

(6)    All writs and processes necessary to enforce the judgment in favor of Plaintiff; and

(7)    All other and further relief to which Plaintiff is entitled, subject to Relator's rights under 31 U.S.C. § 3730.

If any two or more requests for relief are inconsistent, they are pleaded in the alternative, as authorized by FED. R. CIV. P. 8(a).

### Relators' Prayer for Relief

WHEREFORE, based on the foregoing averments, Relators pray that upon proper service of process (or waiver thereof), notice, and trial, or upon motion for entry of default judgment or summary judgment, the Court render judgment awarding Relators the following relief against Defendant:

(1)     If the United States elects to proceed with this action, 25 percent (or such lesser percentage as the Court may determine based on the record and applicable law, but not less than 15 percent) of the proceeds of the action or settlement of the claims stated herein;

(2)     If the United States elects not to proceed with this action, 30 percent (or such lesser percentage as the Court may determine based on the record and applicable law, but not less than 25 percent) of the proceeds of the action or settlement of the claims stated herein;

(3)     Attorney's fees reasonably incurred by Relators in the course of preparing and prosecuting this action, including conditional awards of additional fees to be incurred in the event of any appeals;

(4)     Reasonable expenses necessarily incurred by Relators or their attorneys in the course of preparing and prosecuting this action, including conditional awards of additional expenses to be incurred in the event of any appeals;

(5)     All costs incurred by Relators or their attorneys in this action;

(6)     Postjudgment interest at the highest lawful rate on the sum of the foregoing amounts from the date of the judgment until paid;

(7)     All writs and processes necessary to enforce the judgment in favor of Relators;

and

(8)     All other and further relief to which Relators are entitled.

If any two or more requests for relief are inconsistent, they are pleaded in the alternative, as authorized by FED. R. CIV. P. 8(a).

DATED:  August 26, 2014.

Respectfully submitted,

*/s/ James A. Fisher*
James A. Fisher, *Attorney-in-Charge*
   State Bar of Texas Number 07051650
   email address:  jfisher@fisherwelch.com
Shannon L.K. Welch
   State Bar of Texas Number 90001699
   email address:  swelch@fisherwelch.com
**Fisher & Welch**
**(A Professional Corporation)**
2800 Ross Tower
500 North Akard Street
Dallas, Texas 75201
telephone:   214.661.9400
facsimile:   214.661.9404

**ATTORNEYS FOR RELATORS**
**SUZANNE SCOTT AND**
**SAVANNAH SOGAR**